## Case No. 7,052.

### INSURANCE CO. v. NEW ORLEANS.

[1 Woods, 85.] [1]

Circuit Court, D. Louisiana. Nov. Term. 1870.

James B. Eustis and Robert Hutchinson, for complainant.

Geo. S. Lacey, City Atty., for defendant.

WOODS, Circuit Judge. The bill alleges in substance that complainant is a corporation, created by the laws of the state of New York, and having its principal place of business in that state, but also through its agents, James Picton and Charles S. Goode, doing business in the city of New Orleans, and state of Louisiana, and that the city of New Orleans is a municipal corporation created by the laws of the state of Louisiana. That said city, on the 6th day of December, 1870, passed an ordinance for the purpose of levying a license tax on persons pursuing any trade, calling or profession in said city, by which foreign life and accident insurance companies are required to pay a license tax of five hundred dollars, and home companies a license tax of two hundred and fifty dollars. That the ordinance imposing said tax is in violation of the 14th amendment to the constitution of the United States, because it assesses an unequal tax upon the complainant, and for the same reason, is in violation of the constitution of the state of Louisiana, which requires taxation to be equal and

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

uniform. That the city of New Orleans had no right or power to levy said tax upon complainant, because the state of Louisiana, by an act of its general assembly, approved March 16, 1870 (section 3, art. 15), provided that "no insurance company whose license tax should be one thousand dollars, should be liable to any assessment throughout the state other than that imposed by said article;" that complainant has paid a license tax of one thousand dollars to the state of Louisiana for the year 1871, and no other or further license tax can be imposed by state or municipal authority. Finally, that the city of New Orleans had no right to discriminate in the matter of taxation against complainant, which is a right belonging to the state, if it exists at all.

The bill further alleges that John S. Walton, who is charged with the administration of the finances of the city, is about to enforce the collection of said tax from complainant, and prays that said Walton and Benjamin F. Flanders, the mayor of said city, may be enjoined from the collection thereof, or any portion thereof, and for general relief. Instead of demurring to the bill, the city of New Orleans, defendant, files an answer which admits substantially the facts alleged in the bill, but takes issue on the conclusions of law deduced therefrom. The case is submitted on motion for the allowance of the injunction prayed for by the bill.

The first question presented for adjudication is: Admitting the tax to be unequal, is the ordinance providing for its levy and enforcement in violation of the 1st section of the 14th amendment to the constitution of the United States, especially the last clause of the section? The section reads as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The complainant, to be entitled to the protection of this constitutional provision, must be either a citizen of the United States or a person in the sense in which that term is used in this section.

It has been repeatedly held, by the supreme court of the United States, that corporations were not citizens of the several states in such sense as to bring them within the protection of that clause in the constitution of the United States (section 2, art. 4) which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 586; Paul v. Virginia, 8 Wall. [75

U. S.] 177. Are corporations citizens of the United States within the meaning of the constitutional provision now under consideration? It is claimed in argument that, before the adoption of the 14th amendment, to be a citizen of the United States, it was necessary to become a citizen of one of the states, but that since the 14th amendment this is reversed, and that citizenship in a state is the result and consequence of the condition of citizenship of the United States. Admitting this view to be correct, we do not see its bearing upon the question in issue. Who are citizens of the United States, within the meaning of the 14th amendment, we think is clearly settled by the terms of the amendment itself. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." No words could make it clearer that citizens of the United States, within the meaning of this article, must be natural, and not artificial persons; for a corporation cannot be said to be born, nor can it be naturalized. I am clear, therefore, that a corporate body is not a citizen of the United States as that term is used in the 14th amendment.

Are corporations persons within the meaning of the same amendment? The word "person" occurs three times in the first section, in the following connections: "All persons born or naturalized in the United States"—"nor shall any state deprive any person of life, liberty or property," etc.— "nor" shall any state "deny to any person within its jurisdiction the equal protection of the laws." The complainants claim that this last clause applies to corporations—artificial persons. Only natural persons can be born or naturalized; only natural persons can be deprived of life or liberty; so that it is clear that artificial persons are excluded from the provisions of the first two clauses just quoted. If we adopt the construction claimed by complainants, we must hold that the word "person," where it occurs the third time in this section, has a wider and more comprehensive meaning than in the other clauses of the section where it occurs. This would be a construction for which we find no warrant in the rules of interpretation. The plain and evident meaning of the section is, that the persons to whom the equal protection of the law is secured are persons born or naturalized or endowed with life and liberty, and consequently natural and not artificial persons. This construction of the section is strengthened by the history of the submission by congress, and the adoption by the states of the 14th amendment, so fresh in all minds as to need no rehearsal. We are of opinion, therefore, that the ordinance of the city of New Orleans is not in violation of the provisions of the 14th amendment to the constitution of the United States.

But complainants assert that the tax imposed is not an equal tax, and is therefore forbidden by the constitution of the state of Louisiana, article 123 of which says "taxation shall be equal and uniform throughout the state." Is the tax imposed on the complainant an unequal tax within the meaning of the constitution of the state of Louisiana? This precise question has been passed upon by the supreme court of Louisiana in the case of State v. Lathrop, 10 La. Ann. 402. In that case the court say: "This is a suit for $1,000 tax on a foreign insurance company not chartered in this state, but transacting business therein. The tax is imposed under an act of the legislature, approved April 30, 1853.* It is resisted on the ground that the same statute imposes a tax of but five hundred dollars upon an insurance company incorporated by the laws of the state, and transacting business therein. The defendant contends that the distinction made between these two classes of cases is in violation of article 123 of the state constitution, which declares that 'taxation shall be equal and uniform throughout the state.' The provision of the constitution relied on by the defendant has not deprived the legislature of the power of dividing the objects of legislation into classes. It merely obliges the legislature to impose an equal burden upon all those who find themselves in the same class. Now the class of insurance offices liable to the one thousand dollar tax under the statute in question is entirely different from that which is liable to the five hundred dollar tax." "It is a mere confusion of ideas to put these foreign corporations on the same footing with corporations which are the creatures of our own state laws from the simple fact of their being alike corporations. It is equally unsound to claim for them the personal and constitutional rights of the citizens of the several states throughout the union. Judgment affirmed with costs." To precisely the same effect is the case of State v. Fosdick, 21 La. Ann. 434.

These decisions settle conclusively the point under discussion against the complainant.

But complainant bases his prayer for relief upon the further ground, that the state revenue law, approved March 16, 1870 (section 3, art. 15), which declares that no insurance company whose license tax shall be one thousand dollars shall be liable to any assessment throughout the state other than that imposed by that article, is a contract on the part of the state with the insurance companies, to the effect that on the payment of a license tax of one thousand dollars for the year 1871, the insurance companies should be for that year excepted from all other license tax, state, municipal and parochial, and the complainant having paid one thousand dollars for license tax for the year 1871, cannot be further assessed by the city of New Orleans for that year. If the

---

* [Laws, p. 136.]

construction given to the revenue law of 1870, by the complainants, is the correct one, then whether it is considered to be a contract or not, it must control and limit the taxing power of the municipal corporations in the state. The question is therefore presented, did the legislature intend by the revenue act of March 16, 1870, to relieve foreign insurance companies from all other license tax on the payment to the state of a license tax of not less than one thousand dollars.

The law under consideration provides that "there shall be levied and collected an annual tax .* * * from each insurance company or agency not chartered by this state, and whose annual gross receipts for premiums are more than one hundred thousand dollars, one thousand dollars; when less than one hundred thousand and more than seventy-five thousand, seven hundred and fifty dollars; * * * provided that no insurance company whose license tax shall be one thousand dollars shall be liable to any assessment throughout the state, other than that imposed by this article. Section 7 of the same act provides, "that from every insurer or insurance company not chartered by this state, and transacting an insurance business therein, there shall be collected an annual tax of one per centum upon the gross amount of premiums earned each year from policies issued through agencies in the state." It is only necessary to place these two provisions of the law side by side to see clearly the meaning of the first. The effect of the law is this: When the state license tax of a foreign insurance company, under the first provision, amounts to a thousand dollars or more, the company is relieved from the payment of any further tax to the state, under the provisions of section 7. This is the plain and obvious construction. The law under consideration is an act for raising a revenue for the state, and ought not to be construed to extend to other subjects, when such construction is not obviously necessary to give it full effect.

The view we entertain is strengthened by the fact that the act establishing a new charter for the city of New Orleans, approved on the same day as the revenue act, authorizes the city to levy a license tax upon trades, professions and callings, without limitation or restriction. These two acts must be construed together, and such effect given to both, if possible, as shall allow both of them to stand. Under our construction of the revenue act, this is done. The state is allowed to enforce her license tax upon foreign insurance companies to the amount of a thousand dollars, and any state assessment beyond that is excluded, while the power of the city under her charter to levy a license tax is not interfered with. This construction gives full effect to the proviso in the revenue act, and also to the provisions of the city charter authorizing a license tax upon trades, occupations and callings. We are of opinion therefore that the proviso in the revenue act relied on by complainants does not restrain the city of New Orleans from the collection of the tax complained of.

Finally it is claimed by complainant that even granting that the state of Louisiana has constitutional power to discriminate between foreign and domestic corporations in the matter of taxation, yet the city of New Orleans has no such power. If the state is not forbidden by either the federal or state constitution from levying the tax complained of, it is difficult to see how any constitutional prohibition can rest upon the city of New Orleans. The state has conferred generally upon the city the right to levy a license tax upon trades, professions and callings. The only limitations imposed by law upon this power, are: 1. That the ordinance levying the tax must not be contrary to the constitution of the United States or of the state of Louisiana. 2. That it must be in harmony with the general laws of the state, and with the provisions of the charter; and 3. That it must be reasonable; and to render it reasonable, it should tend in some degree to the accomplishment of the objects for which the corporation was created and its powers conferred. Cooley, Const. Lim. 201. We do not think the ordinance under consideration is open to objection upon either of these grounds. The result of this discussion is that the complainants have not shown, by bill, any ground for the relief prayed. The motion for the injunction is overruled, at complainant's costs.