By the Court.
 

 These cases were presented together for the reason that all five of them involve similar questions of situs under the provisions of Sections 5328-1 and 5328-2, General Code.
 

 These and cognate provisions have been discussed and applied in many recent decisions by this court.
 
 Aluminum Co. of America
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 385, 45 N. E. (2d), 118;
 
 Procter & Gamble Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 369, 52 N. E. (2d), 517;
 
 Ransom & Randolph Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 398, 52 N. E. (2d), 738;
 
 Haverfield Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 58, 54 N. E. (2d), 149;
 
 C. F. Kettering, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 419, 59 N. E. (2d), 370;
 
 National Cash Register Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 145 Ohio St., 597, 62 N. E. (2d), 327;
 
 American Rolling Mill Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 147 Ohio St., 207, 70 N. E. (2d), 651.
 

 Section 5325-1, General Code, reads as follows:
 

 “Within the meaning of the term ‘used in business/ occurring in this title, personal property shall be considered to be ‘used’ when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as
 
 *231
 
 material, parts, products or merchandise; but merchandise or agricultural products belonging to a nonresident of this state shall not be considered to be ■used in business in this state if held in a storage warehouse therein for storage only. Moneys, deposits, investments, accounts receivable and prepaid items, and other taxable intangibles shall be considered to be ‘used’ when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere. ‘Business’ includes all enterprises of whatsoever character conducted for gain, profit or income and extends to personal service occupations.”
 

 Section 5328-1, General Code, reads in part as follows :
 

 “* * * Property of the kinds and classes mentioned in Section 5328-2 of the General Code, used in and arising out of business transacted in this state by, for or on behalf of a nonresident person, other than a ■foreign insurance company as defined in Section 5414-'8 of the General Code * * * shall be subject to taxation
 

 Section 5328-2, General Code, contains the following provisions:
 

 “Property of the kinds and classes herein mentioned, when used in business, shall be considered to -arise out of business transacted in a state other than that in which the owner thereof resides in the cases and •under the circumstances following:
 

 “In the case of accounts receivable, when resulting from the sale of property sold by an agent having an office in such other state or from a stock of goods maintained therein, or from services performed by an officer, agent or employee connected with, sent from, or reporting to any officer or at any office located in such other state. * * *
 

 
 *232
 

 i 1
 
 The provisions of this section shall be reciprocally applied, to the end that all property of the kinds and classes mentioned in this section having a business situs in this state shall be taxed herein and no property of such kinds and classes belonging to a person residing in this state and having a business situs outside of this state shall be taxed. It is hereby declared that the assignment of a business situs outside of this state to property of a person residing in this state in any case and under any circumstances mentioned in this section is inseparable from the assignment of such situs in this state to property of a person residing outside of this state in a like case and under similar circumstances. If any provision of this section shall be held invalid as applied to property of a nonresident person, such decision shall be deemed also to affect such provision as applied to property of a resident, but shall not affect any other provision hereof.”
 

 The facts relating to two of the companies here involved are not in dispute and are supplied by stipulations. The two concerning the National Distillers Products Corporation are ten and nine pages respectively in length and need not be quoted in full for the purposes of this discussion. As above indicated, this company is a Virginia corporation. Its shareholders ’ meetings are held in that state. Its principal business office is located in the city of New York where the meetings of its directors are held and where all its business activities are controlled. All its accounts payable are paid from funds on deposit there. It has distilling and refining plants in seven states, including a large plant at Carthage, Hamilton county, Ohio. It sells its products in every state where such products may be sold legally. Pay-roll checks for employees of these several plants and checks for federal excise taxes due from these plants are paid with funds
 
 *233
 
 on deposit in banks in those localities. The funds are obtained through checks drawn at the New York office on banks in that city. All accounts receivable are posted in the books of the company in the New York office where the accounts are payable. All the receipts are deposited in New York banks. The accounts receivable, the allocation of which resulted in the additional assessments of intangible property tax and corporation franchise tax, arose from the sale of products manufactured by the company at its Carthage plant. The products were shipped from a stock of goods maintained by the company at that plant to points in Ohio and other states. All orders for the sale of these products were solicited by agents outside of Ohio. The orders were forwarded to New York and were subject to acceptance or rejection at the New York office. When orders were accepted, shipping instructions were forwarded to the Ohio plant from which the products were then shipped to the designated points in Ohio and elsewhere. The moneys received from the accounts receivable were used by the company in its business generally wherever needed. In filing its' annual report and tax return the company allocated none of its accounts receivable to -Ohio.
 

 In its opinion the Board of Tax Appeals correctly summarized the matter as follows:
 

 “The appellant, as a corporation organized and existing under the laws of the state of Virginia, is a legal resident of that state; and as to the appellant corporation the state of Ohio is ‘a state other than that in which the owner thereof resides’ and such other state within the provisions of Section 5328-2, General Code, fixing the situs of accounts receivable and of other intangible property for purposes of taxation. In this situation, and applying the statutory
 
 *234
 
 provisions here in question as the same have been construed by the Supreme Court of this state, it follows that since the accounts receivable of the appellant corporation involved in this case arose — as this board' hereby finds — in the conduct of its business in the state of Ohio by the sale of its products from a stock of goods located in this state, and since, further, such accounts receivable or the avails thereof were used or were intended to be used by the appellant in its business, whether in this state or elsewhere, such accounts receivable have a business and taxable situs in the state of Ohio, as found and determined by the Tax Commissioner.”
 

 The company contends further that this interpretation of Section 5328-2, General Code, renders these provisions violative of the due-process and equal-protection clauses of the state and federal constitutions. However, this question was squarely and properly decided in the recent case of
 
 Parke, Davis & Co.
 
 v.
 
 City of Atlanta,
 
 200 Ga., 296, 36 S. E. (2d), 773, 163 A. L. R., 976, in which the first and fourth paragraphs of the syllabus read as follows:
 

 “1. Where a foreign corporation kept a stock of goods in a warehouse in the city of Atlanta, Georgia, orders were received and approved outside the state,, which were filled by delivering goods from the warehouse to resident purchasers and to common carriers for delivery to nonresident purchasers, accounts receivable thereon arise out of business conducted in the city of Atlanta, and would have a taxable situsfor
 
 ad valorem
 
 taxation by said municipality, notwithstanding that the orders taken by the nonresident owner for the merchandise sold in the municipality are passed upon as to the credit of customers, and the books of account are kept at a point without the city of Atlanta and the state of Georgia. *
 
 *
 
 *
 

 
 *235
 

 “é.
 
 Where a nonresident corporation became the ■owner of accounts receivable arising out of business conducted in a municipality in this state, such credits ■had a tax situs in the municipality where such business was conducted, so that the enforcement of a 'tax upon the credits would not be contrary to the guaranty of the due process or equal protection of the law as expressed in the Fourteenth Amendment to the Constitution of the United States, or paragraphs 2 and 3 of ■Section 1 in Article I of the Constitution of Georgia, notwithstanding that the credit of the customers may have been passed upon and the books of' account kept by the corporation at a point without the state.”
 

 The facts concerning the Wheeling Steel Corporation are embodied likewise in a stipulation. As already stated, it is a Delaware corporation and maintains an office in that state. However, Wheeling, West Virginia, is the location of its principal office and place of business where all meetings of the shareholders, directors and executive committee are held. Its general books and accounting records are kept there. All credit is determined there; and the collections of notes and accounts receivable are made there. Four manufacturing plants are operated in West Virginia and four in Ohio. Sales offices are maintained in twelve states — one in Ohio. When notes and accounts receivable are paid, the avails thereof are applied indiscriminately to the general purposes of the company’s business, whether in Ohio or elsewhere. Pay rolls are prepared and pay-roll checks are prepared, ■signed and distributed at each plant. Bank' balances sufficient for this purpose are maintained in each such ■community.
 

 In its opinion the Board of Tax Appeals said in part:
 

 “It is clear that under this statute [Section 5328-1, General Code] intangibles owned by a nonresident •cannot be taxed unless they are both used in business
 
 *236
 
 in this state and arise out of business transacted here. & # * ‘
 

 “Since the avails of these accounts receivable were-applied to the conduct of appellant’s business generally, both in this state and elsewhere, they must be held to be used in business within the meaning of this statute [Section 5325-1, General Code]. * * *
 

 “It is to be noted that a considerable portion of the-products, the sales of which resulted in the accounts receivable in question, was manufactured after the orders thereof were accepted. However, no stress has-been put by the appellant on whether these products so-sold were shipped from a stock of goods maintained in-Ohio since it is its claim that none of its accounts receivable is taxable here. The board is of the opinion-that it makes no difference whether the products were-put into their completed forms before or after the orders therefor were accepted. The appellant certainly maintained in Ohio a stock of goods which was-necessary to make the completed products. The same question arose in the case of
 
 National Distillers Products Corporation
 
 v.
 
 Glander,
 
 No. 11118, decided1 by this board on March 12, 1947.' In that case approximately 90% of the whiskey shipped in cases from appellant’s plant at Carthage, Ohio, was blended, rectified or bottled only upon receipt of shipping orders,, and the board held that the sales thereof were made-from a stock of goods maintained in Ohio. Beference is hereby made to the entry in that case and also to-the entry on the appeal of the same company with reference to a franchise tax assessment decided on the-same date and bearing No. 9095.
 

 “For the foregoing reasons the board finds that the accounts receivable in question resulted from sales-of property from a stock of goods maintained in Ohio and, therefore, arose out of business transacted in this state and, consequently, are taxable here.
 

 
 *237
 
 “No argument is made in any of the briefs with reference to the prepaid items, which consisted of prepaid insurance premiums on property located in this state. As to this, Section 5328-2, General Code, provides that prepaid items when used in business shall be considered to arise out of business transacted in a state other than the residence of the owner when the right acquired theréby relates exclusively to the business to be transacted in such other state or to property used in such business. The board finds that these prepaid items relate to property used in appellant’s business in this state and, in view of the above’ statutory provisions, arose out of business transacted in this state and are, therefore, taxable.”
 

 The facts concerning the United States Gypsum Company are presented by a stipulation of facts and the testimony of two witnesses.
 

 This company is an Illinois corporation with its principal office in the city of Chicago. It is engaged in the manufacture and sale of gypsum products and many other building materials. It owns and operates numerous plants in the United States and Canada. Five of them are located in Ohio. All corporate and business activities are conducted at the Chicago office where meetings of the directors, shareholders and executive committee are held. All corporate records, general books and accounting records are kept there. All payroll checks are prepared and signed there and are drawn on funds there and in Ohio. Sales are managed and directed through divisional and district sales offices. Two district offices are located in Ohio. Orders taken by salesmen are subject to acceptance or rejection at the Chicago office. All invoices for products sold to customers in Ohio or shipped from Ohio plants are prepared and issued in Chicago, except in a few instances when shipments are invoiced from New
 
 *238
 
 York or Los Angeles; and all such invoices are posted in the accounts receivable ledgers of the company in Chicago or Los Angeles where they are payable. Checks received in payment of such accounts are deposited by the receiving office in various banks throughout the United States, and such deposits are under the exclusive control of the Chicago office and are used and applied indiscriminately to the general purposes of the company’s business in Ohio and elsewhere.
 

 In its opinion the Board of Tax Appeals reached the following conclusion:
 

 “The evidence shows that certain manufacturing or processing .of the raw products, which were kept on hand at its Ohio plants in sufficient quantities to fill any orders that may be received, was necessary to convert them into the completed products ordered. This process took anywhere from approximately four minutes to less than one hour. The board is of the opinion that it makes no difference whether the products were put into their completed form before or after the orders therefor were accepted and received. The evidence shows that the appellant did maintain in Ohio a stock of goods which was necessary to make the completed products sold by it. The same questions arose in the case of
 
 National Distillers Products Corporation
 
 v.
 
 Glander,
 
 No. 11118 decided by this board on March 12, 1947, and the case of
 
 Wheeling Steel Corporation
 
 v.
 
 Glander,
 
 No. 9681 decided by this board April 7, 1947. Reference is hereby made to the entries in those cases and also to the case of
 
 National Distillers Products Corporation
 
 v.
 
 Glander,
 
 No. 9095 with reference to a franchise tax assessment decided on March 12, 1947.
 

 “For the foregoing reasons the board finds that the accounts receivable in question resulted from sales of property from a stock of goods maintained in Ohio.”
 

 The company insists that there is a total lack of
 
 *239
 
 integration of the accounts receivable with that part of the company’s total business which is conducted in Ohio. This court finds that it cannot agree with this contention. In this and the other cases the decisions of the Board of Tax Appeals must be affirmed.
 

 Decisions affirmed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.