Benjamin FRIEDMAN, Plaintiff-
Appellee,

v.

N. B. C. MOTORCYCLE IMPORTS, INC.,
Defendant-Appellant.

Clarence P. NEILSON, Ziff Davis Pub-
lishing Co., Inc., Defendants-Appel-
lants-Appellees,

v.

BERLINER MOTOR CORPORATION,
Defendant-Appellant.

Nos. 18–20, Dockets 71–1242, 71–1292
and 71–1293.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1971.

Decided Dec. 16, 1971.

Moore, Circuit Judge, dissented and
filed opinion.

Asher Marcus, Leahey & Johnson, New York City, for defendant-appellant N. B. C. Motorcycle Imports, Inc.

E. Richard Rimmels, Jr., Garden City, N. Y. (Montfort, Healy, McGuire & Salley, Richard W. Hartig, Jr., Garden City, N. Y., of counsel), for defendants-appellants-appellees Clarence P. Neilson and Ziff Davis Publishing Co., Inc.

Arthur N. Seiff, Katz & Gantman, New York City, for defendant-appellant Berliner Motor Corp.

Joseph P. Napoli, New York City (Harry H. Lipsig and Joseph B. Castleman, New York City, of counsel), for plaintiff-appellee Benjamin Friedman.

Before MOORE, SMITH and HAYS, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge:**

Plaintiff Friedman is a young, free lance photographer, who was employed by the defendant Ziff Davis Publishing Co. (hereinafter referred to as "Davis"), publisher of Cycle Magazine, to photograph in motion a new motorcycle to be operated by defendant Neilson, an experienced motorcyclist and associate editor of Davis. Davis borrowed the motorcycle from defendant Berliner Motor Corporation ("Berliner"), a New Jersey firm, which in turn borrowed license plates from defendant N.B.C. Motorcycle Imports, Inc. ("N.B.C."), also a New Jersey firm. The motorcycle was taken from New Jersey to a parking lot in New York, where on a clear, dry day on dry pavement, the shots were taken. Friedman remained stationary on one knee while the motorcycle approached him at speeds of from 15–25 m. p. h. veering at distances variously estimated at 10–15 feet to 20–30 feet, to pass either 1½ to 2 feet, or 3 to 5 feet from Friedman. On the fifth such approach, Neilson veered either too late or not far enough, the left brake lever striking Friedman on the left thigh resulting in a compound fracture of the left ilium.

The basic issue urged on the court by all defendants is that Friedman was guilty either of contributory negligence or assumption of risk or both as a matter of law, and they therefore are entitled to a reversal coupled with a directed verdict; or, if not that, the defense of assumption of risk was erroneously foreclosed from the jury, entitling them to a new trial. All defendants also urge that the verdict is clearly excessive.

Looking first to the claim of excessiveness, we find no justification for reducing the amount. We may not reduce a damage award on appeal unless "the amount is so high that it would be a denial of justice to permit it to stand." Dagnello v. Long Island R.R., 289 F.2d 797 (2d Cir. 1961). *See also*, Grunenthal v. Long Island R.R., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). Here there was a showing of some $11,400 special damage, a hip fracture exposing the bone and requiring removal of chips, five operations and skin grafting resulting in pronounced scarring of both legs. There was evidence of substantial pain and an osteomyelitis with uncertain prognosis for the future. A verdict of $80,000 under these circumstances, while large, cannot be said to be grossly excessive, scandalous or "so high that it would be a denial of justice to permit it to stand."

The court declined to charge in terms on assumption of risk but did charge fully on contributory negligence. It is true that the courts, including those of New York, make a distinction between the two defenses, and it may be that it would have been better practice to charge separately on both. Under the facts presented before the jury, however, the charge as given appears to us sufficient. Here the question under either label was whether Friedman acted unreasonably in the light of the situation facing him. The charge put to the jury not only the question of whether Friedman moved into the path of the motorcycle, but also whether plaintiff failed to exercise that degree of care for his own safety that a reasonably prudent person would have exercised under the same circumstances. The jury was

instructed that negligence, however slight, of the plaintiff will be sufficient to bar recovery by him provided his negligence is a substantial factor in causing the injury.

The charge, particularly as it followed the argument by counsel as to Friedman's placing himself in a position of danger and failing to use a shield, sufficiently placed before the jury the only issues which could have constituted assumption of risk.

■ Plaintiff had testified that he saw no danger in the procedure used inasmuch as he knew from personal observation that Neilson was an expert driver, and that there no problems inherent in taking the shot.

In the light of this testimony, there is no support for the claim of contributory negligence or assumption of risk as a matter of law.

We have considered the other claims of error in arriving at the plaintiff's verdict and find no basis for reversal.

■ The court dismissed N.B.C.'s cross-complaint for full indemnification from Neilson and Davis, without prejudice to an action pending in the Supreme Court of New York for Nassau County. There was an indication that the court felt that there was in any case no evidence that N.B.C. was only a passive tort-feasor (there was a claim that N.B.C. violated a New York statute in loaning its plates, and so was arguably actively negligent) but the effect of the order was to decline to pass on the issue. In this the court was in error. The existence of the state court action was not sufficient ground for failure to dispose of an issue on trial in the federal action. Both actions could go forward at the same time, with application of the principles of *res judicata* if raised in the later pending action. *See* Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295–296, 90 S. Ct. 1739, 26 L.Ed.2d 234 (1970).

Judgment for plaintiff affirmed. Judgment dismissing cross-claim reversed and case remanded for further proceedings thereon.

MOORE, Circuit Judge (dissenting):

I disagree with the majority that the district court's failure to charge the jury on assumption of risk was harmless error; I would therefore reverse and remand for a new trial.

As the majority apparently concedes, it was clear error for the district court to fail to instruct the jury that recovery for plaintiff would be barred if they found that plaintiff did realize or should have realized the danger involved in photographing an oncoming motorcycle. This failure, however, the majority excuses on the ground that the contributory negligence charge was tantamount to an assumption of risk charge.

New York law is quite strict in holding that plaintiffs who realize or should realize the risk of injury from their conduct are barred from recovery *as a matter of law*.[1] At the very least, then, the

---

1. *See* Nucci v. Warshaw Constr. Corp., 12 N.Y.2d 16, 234 N.Y.S.2d 196, 186 N.E.2d 401 (1962); Shields v. Van Kelton Amusement Corp., 228 N.Y. 396, 127 N.E. 261 (1920); Greelish v. New York Cent. R. R. Co., 29 A.D.2d 159, 286 N.Y.S.2d 61 (3d Dep't 1968), aff'd mem., 23 N.Y.2d 903, 298 N.Y.S.2d 308, 246 N.E.2d 161 (1969); Avery v. Order of St. Basil the Great, 27 A.D.2d 481, 280 N.Y.S.2d 171 (3d Dep't 1967), aff'd mem., 21 N.Y.2d 908, 289 N.Y.S.2d 625, 236 N.E.2d 857 (1968).

While the defense of assumption of risk is said to apply only to the *knowing* acceptance of the risk of injury, an objective standard does in fact play a role in the defense:

. . . It is evident that a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that he did not know or understand the risk; and there have been a good many cases in which the courts have said in effect that he is not to be believed, so that in effect something of an objective element enters the case, and the standard applied in fact does not differ greatly from that of the reasonable man. The

issue of whether plaintiff here assumed the risk of his injury in accepting the photo assignment should have gone to the jury.[2]

It is true that the court in its supplemental charge[3] on contributory negligence used language that arguably encompasses the question of whether plaintiff was negligent in accepting the photo. assignment. It is also true that defense counsel in his summation specifically argued that plaintiff "should have known better" in photographing an oncoming motorcycle. But the significance of this evidence supporting the contention that the court's error was harmless pales in light of the court's language in explicitly refusing to charge assumption of risk.[4] During trial the court granted plaintiff's motion to strike the defense; in so doing the court remarked:

It is not true in this case that a fair inference can be drawn to the effect that he was taking head-on pictures. He was not. That would be perfectly ridiculous. It would be like placing himself in the path of a moving motor vehicle, or placing himself on the tracks of a train that is approaching him to take a photograph, and then trying to jump away at the last minute. He was doing no such thing.

He was stationary, the driver of the motorcycle was supposed to pass at a distance from him, a short distance, but at a distance from him, and he was not trying to take head-on pictures at all.

I decline to permit you to argue assumption of risk—[5]

In its charge to the jury the court made it clear that they were not to consider the issue of whether plaintiff's acceptance of the photo assignment constituted an assumption of the risk of injury:

Let us also be careful to limit this question of negligence to the precise circumstances to which it applies. The suggestion has been made by counsel that they could have had a shield or they could have put an automobile there. In fact, he could have taken these pictures behind a brick wall with a hole through it, I suppose, if they had found a brick wall with a hole through it.

But, we are not dealing with that. That is not the correct frame of reference. The time and circumstances deal with the time when this motorcycle was moving towards the photographer plaintiff, who is in a stationary condition and position, according to his testimony and that of the driver of the motorcycle. You must ask

plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him.
W. Prosser, Torts § 67, at 462–63 (3d ed. 1964). For New York cases that implicitly support this position, see Nucci v. Warshaw Constr. Corp., *supra*, 12 N.Y.2d at 19, 234 N.Y.S.2d at 199, 186 N.E.2d at 402–403; Greelish v. New York Cent. R. R. Co., *supra*, 29 A.D.2d at 161, 286 N.Y.S.2d at 63.

2. ". . . assumption of risk is a jury question in all but the clearest cases." W. Prosser, *supra* note 1, at 453–54 (footnote omitted).

3. In the robing room after the court delivered its charge one of the defense counsel objected to the charge on contributory negligence in that it did not make clear that negligence of the plaintiff, however slight, bars his recovery

if such negligence is a substantial factor in causing the injury. The supplemental charge was to correct this perceived error in the first charge.

4. *See* Greelish v. New York Cent. R. R. Co., 29 A.D.2d 159, 161–162, 286 N.Y.S. 2d 61, 64 (3d Dep't 1968), aff'd mem., 23 N.Y.2d 903, 298 N.Y.S.2d 308, 246 N.E.2d 161 (1969):
. . . in actions where the factual situations are decisive in determining the issues of negligence and contributory negligence, the jury should be instructed in reasonable detail as to such issues and a *pro forma* charge, such as given in the present action, is neither legally sufficient nor helpful to a jury in fairly assessing the issues, particularly on the controlling issue of contributory negligence.

5. Transcript of Trial at 258–59.

yourselves as of that time, as of that place, under those circumstances as we find them to have existed at that time, was the plaintiff contributorily negligent.

There was no time to build a brick wall or to get a car between him and this motorcycle. I suggest to you that the charge of contributory negligence on that basis has no place in the case.[6] In light of this evidence, it seems to me that of the two possibilities—that the jury did consider the issue of assumption of risk or that it did not—the latter is the more likely.

Because New York law requires at the very least that defendant be permitted to go to the jury on the assumption of risk issue, and because the error here may well have contributed to the verdict, I would reverse and remand for a new trial.