LOUIS ENDER, INC., Appellant,

v.

GENERAL FOODS CORPORATION,
Appellee.

No. 770, Docket 72–1271.

United States Court of Appeals,
Second Circuit.

Argued June 12, 1972.

Decided Sept. 29, 1972.

Sidney S. Bobbe, New York City, for appellant.

Robert MacCrate, New York City (William T. Stephens, Sullivan & Cromwell, New York City, on the brief), for appellee.

Before KAUFMAN, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

Louis Ender, Inc. appeals from an order of the United States District Court for the Southern District of New York granting defendant-appellee General Foods Corporation summary judgment in an action under 15 U.S.C. § 1120 (1970) for "damages sustained in consequence" of appellee's alleged procurement of federal registration of the trademark "Maxim" by false declarations in its application for registration. The district court, 341 F.Supp. 1015, ruled that Ender was collaterally estopped from relitigating issues that had been "finally and conclusively determined adversely to Ender" in a prior action in the Supreme Court of New York. We affirm on the ground that, even assuming that General Foods procured registration of the trademark on the basis of false declarations in its application, Ender failed to allege "any damages sustained in consequence thereof."

## I.

Louis Ender, Inc., a wholesale grocery business located in New York, is the assignee of the trademark "Maxim," first registered with the Patent Office in 1908. That trademark was registered specifically for use in the sale of sardines, and, prior to 1965, the trademark was used by the successive assignees only in connection with sardines. General Foods Corporation produces and distributes a large variety of food products, including instant coffee. While continuing to produce and to sell regular instant coffee under its "Maxwell House" label, General Foods developed a process for "freeze drying" coffee. When General Foods considered marketing the new form of instant coffee, it decided that the name "Maxim" would be suitable, perhaps because it was suggestive of General Foods' "Maxwell House" brand of regular instant coffee. General Foods discovered that that mark was not registered for coffee but that

appellant was the assignee of that mark for sardines. To avoid the possibility of friction, Alexander A. Forgacs, an agent of General Foods, procured a consent agreement from Ender on July 31, 1963. This agreement was subsequently assigned to General Foods by Forgacs. Under this agreement:

"(1) Ender . . . [granted] its consent to the registration and/or use of the name MAXIM limited to coffee in any form and tea in any form and . . . [acknowledged] its belief that such use of the name MAXIM is not likely to cause confusion or deception of purchasers.

"(2) Ender [agreed] not [to] use the name MAXIM for any coffee, coffee product, beverage, beverage product, or any preparation for use in making any beverage or beverage product."

On November 29, 1963 General Foods began test marketing the freeze-dried coffee under the name "Maxim." On January 21, 1964 it filed an application with the Patent Office for registration of the trademark "Maxim" for coffee and the Patent Office granted the application on September 21, 1964.

Ender contends that three declarations in General Foods' application were false: that the trademark "was first used [by General Foods] in interstate commerce on November 29, 1963;" "That to the best of [General Foods'] knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce . . . ;" and that General Foods "believe[d] . . . [General Foods] to be the owner of the mark sought to be registered . . . ."

In the fall of 1965, Ender for the first time began marketing canned fruit juices under the name "Maxim." General Foods advised Ender that the sale of juices under the name "Maxim" was a violation of the consent agreement, but Ender maintained that fruit juices were not "beverage[s]" or "beverage product[s]" within the meaning of that agreement. The parties were unable to

reach an accord, and in May, 1967 General Foods commenced an action against Ender in the Supreme Court of New York seeking an injunction against Ender's continued use of the name "Maxim" in connection with the sale of juices. General Foods' complaint set forth two causes of action. The first alleged that Ender had breached its contractual obligations under the consent agreement. The second alleged that Ender's "deliberate use, intended to create confusion, of the name 'MAXIM' for orange juice and other beverages infringes [General Foods'] use of the name, and constitutes an unlawful and unfair trade practice . . . [in] violat[ion of] Section 368–d of the [New York] General business law." While General Foods alleged that it had procured registration of the mark "Maxim" for coffee, General Foods clearly based its request for injunctive relief on the theory that Ender's use of "Maxim" constituted unfair competition.

On July 16, 1970, before any decision had been rendered in the state court action, Ender commenced this action in the district court seeking damages and cancellation of General Foods' "Maxim" registration on the ground that General Foods' application was false in the particulars set forth above. The damages Ender claimed to have "sustained in consequence" of General Foods' procurement of the registration on the basis of false statements were the expenses of defending the state court action that General Foods had commenced. General Foods moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, and Ender cross-moved for summary judgment. The district court denied Ender's motion for summary judgment, denied General Foods' motion to dismiss "without prejudice to its renewal at a more appropriate time," and, because the state court action was sub judice, stayed all proceedings in the federal action pending decision in the state court proceeding. But compare Kline v. Burke Construction Co., 260 U.S. 226, 230–232, 43 S.Ct.

79, 67 L.Ed. 226 (1922); Friedman v. N.B.C. Motorcycle Imports, Inc., 452 F.2d 1215, 1217 (2d Cir. 1971); Vernitron Corp. v. Benjamin, 440 F.2d 105 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971).

In May, 1971 the state court rendered its decision, granting General Foods' application for a permanent injunction against Ender's continued use of "Maxim" in connection with the sale of juices. Ender unsuccessfully appealed that judgment, and General Foods then renewed its motion in the district court for dismissal of the complaint, and moved for summary judgment on the grounds of collateral estoppel. Ender amended its complaint to allege that General Foods had falsely declared in its application for registration that it had used the trademark in interstate commerce on November 29, 1963 "whereas in truth and in fact [General Foods] did not commence such use in [interstate] commerce until the month of May, 1964." In addition, Ender purported to set forth a new claim for relief based on 28 U.S.C. §§ 1331(a), 1343(3) (1970), alleging that the circumstances under which Ender's motion for a new trial in the New York courts was denied constituted a deprivation of due process and equal protection in violation of the fifth and fourteenth amendments, and requesting the district court to declare the judgment of the New York court "in all respects null and void, and that any orders, judgments and proceedings based thereon are also in all respects null and void . . . ." The district court granted General Foods' motion for summary judgment on the ground of collateral estoppel holding that "[t]he issues upon which Ender's claim is asserted here were finally and conclusively determined adversely to Ender" in the New York state court. As to Ender's §§ 1331 and 1343 claims for relief based on the denial of a new trial, the district court ruled that there were no "discernible constitutional questions posed by this contention."

## II.

The district court held, and General Foods contends on this appeal, that the factual determination by the state court that General Foods did not fraudulently obtain registration of its "Maxim" trademark collaterally estops Ender from asserting in this action, based on § 1120, that General Foods' trademark application was fraudulent and that the trademark registration is invalid. An examination of the complaint and the decision in the state court action leads us to conclude, however, that the factual issues litigated in that action are not conclusive as to the factual issues Ender sought to litigate in this action.

General Foods premised the "second cause of action" in the state court suit on New York General Business Law § 368–d (McKinney's Consol.Laws, c. 20 1968). That section provides:

> "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition. . . ."

The opinion in the state court action clearly demonstrates that the decision in favor of General Foods was based on the theory that Ender's conduct in labeling the canned juices with the name "Maxim" constituted unfair competition. Ender had raised the issue of the allegedly false declarations in the application by way of the equitable defense of "unclean hands." While the state court did write that Ender's "claim of fraudulent conduct of [General Foods] in connection with its filing of its application for registration of the trademark *Maxim* for coffee is without merit," it explicitly stated that such a factual finding was totally "irrelevant to the issues here presented, because [General Foods'] causes of action do not depend on its registration of the name *Maxim* for coffee." Since General Foods had a cause of action for unfair competition under § 368–d regardless of whether or not a trademark had been registered with the Patent Office, the state court was not required to pass upon the question of either the validity of General Foods' trademark or the truth or falsity of the declarations in the application for registration. The state court said:

> "As to the second cause of action for unfair trade practices, Section 368–d of the General Business Law explicitly provides that the remedies of the section are available to protect a trademark 'registered or not registered.' The irrelevance of the assertion of fraudulent conduct with respect to [General Foods'] application for registration is, in our opinion, dispositive of [Ender's] contention, so far as the issues presented in this action are concerned.
>
> "The merit or lack of merit or baselessness of [Ender's] claim may properly be left for determination in an appropriate action or proceeding in a proper forum, since the irrelevant claim does not bar [General Foods'] relief in the instant action."

█ The state court's "factual finding" as to the fraud was "not material" to its decision, Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 100, 74 S.Ct. 414, 98 L.Ed. 532 (1954), and success in the state action was not dependent upon General Foods' establishing the validity of the registration of its trademark. Therefore the questions of the validity of General Foods' trademark and the truth or falsity of the declarations in the application were not necessarily litigated and determined in the original [state court] action. See Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1877); Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069 (1927). Thus the district court's grant of General Foods' motion for summary judgment on the grounds of collateral estoppel was erroneous.

But the same analysis that leads to the conclusion that it would be inappropriate to apply the doctrine of collateral estoppel in this action also establishes

that the damages Ender alleged were not "sustained in consequence" of General Foods' procurement of trademark registration as a result of the allegedly false declarations in the application. The monetary damages Ender alleged that it had suffered as a result of General Foods' "illegal" procurement of registration for "Maxim" were the expenses of defending the state court action. But it was totally irrelevant to that action whether or not General Foods' trademark was registered, since General Foods prevailed on the merits on a theory of unfair competition. Ender's expenses of defending an action in which the fact of registration was totally irrelevant did not therefore result from General Foods' allegedly invalid procurement of federal registration. The cases cited by Ender to support the proposition that the expenses of defending the state court action are recoverable in an action based on § 1120 are inapposite.

■ We hold, therefore, that since General Foods' state court action was not predicated upon the federal registration of its "Maxim" trademark for coffee, Ender has failed to allege any damage "sustained in consequence" of the alleged false declarations in the application for registration. The district court should, therefore, have granted appellee's motion to dismiss for failure to state a claim upon which relief could be granted.

### III.

In the district court, Ender amended its complaint to allege that the circumstances under which its motion for a new trial was denied by the state court constituted a denial of due process and equal protection of the laws in violation of the fifth and fourteenth amendments. After the state trial judge had rendered decision in that case, Ender moved for a new trial on the grounds of newly discovered evidence, which, Ender maintained, showed that General Foods would not have suffered irreparable injury if Ender continued to label its canned juices "Maxim." Before the trial judge

had ruled on this motion he was killed in an automobile accident. Under New York procedure, C.P.L.R. § 9002, the administrative justice refused to entertain the motion for a new trial on the ground that he had no power under C.P.L.R. § 5015 to do so. Under New York procedure, the trial justice may entertain a motion to set aside his decision on the ground of newly discovered evidence if such a motion is made within fifteen days of his decision, C.P.L.R. §§ 4404, 4405 and, under C.P.L.R. § 5015(a)(2), "the court" can take the same action if the evidence "could not have been discovered in time to move for a new trial under section 4404." Ender maintains that the statutory scheme as interpreted deprived Ender of due process and equal protection because the trial judge died before ruling on the merits of the § 4404 motion, and Ender could not move under § 5015 because a timely § 4404 motion had been made.

■ Ender's attempt to assert these constitutional claims suffers from fatal defects. First, Ender alleged that the district court had jurisdiction to decide these claims under 28 U.S.C. §§ 1331, 1343(3) (1970). We fail to perceive how General Foods could be considered the proper defendant in such actions, since Ender does not argue that *General Foods'* conduct "damaged" Ender or deprived it of any federal rights under color of state law. Second, Ender apparently was asking the district court to declare the state court judgment void so as to avoid any collateral estoppel effect that judgment might have in this action. We need not even discuss the obvious question of whether a federal district court has the power to grant the relief requested by Ender in these circumstances. See Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L. Ed.2d 234 (1970) It is sufficient to point out that since we hold that the judgment of the state court could not estop Ender from litigating the factual issues it sought to litigate in this action,

the constitutional issues Ender attempts to raise are wholly immaterial.

Third, and most important, the very constitutional issues that Ender sought to assert are considered to have been conclusively decided against Ender by the state courts. Ender appealed both the judgment and the order denying the motion to set aside the trial court's decision or for a new trial to the Appellate Division, which affirmed both. The record does not clearly disclose whether Ender actually presented the constitutional claims to the Appellate Division, but it did advance these arguments in applying for leave to appeal to the New York Court of Appeals. That motion was denied by Chief Judge Fuld, and Ender thereupon sought relief by amending its complaint in the instant action.

The issue of the constitutionality of the C.P.L.R. provisions, as interpreted, was part of the entire case presented to the Appellate Division, and was also presented to the Court of Appeals. New York ex rel. Bryant v. Zimmerman, 278 U.S. 63, 67, 49 S.Ct. 61, 73 L.Ed. 184 (1928); McGoldrick v. Compagnie Generale Transatlantique, 309 U.S. 430, 434, 60 S.Ct. 670, 84 L.Ed. 849 (1940); Street v. New York, 394 U.S. 576, 583–584, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). The proper procedure for Ender to follow in order to vindicate what it asserts to be its constitutional rights was to appeal the decision of the state courts to the Supreme Court. Absent such an appeal, the constitutional issues were conclusively determined against Ender, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Angel v. Bullington, 330 U.S.

183, 186–187, 67 S.Ct. 657, 91 L.Ed. 832 (1947).

Affirmed.

IRVING R. KAUFMAN, Circuit Judge (concurring):

I concur in Parts I and II of Judge Hays' opinion, affirming summary judgment against Ender on its claims under 15 U.S.C. § 1120. Although I agree with the result reached in Part III, which affirms summary judgment against Ender on its constitutional claims, I am unable to concur in the third ground advanced to support that result. Judge Hays holds, as I read his opinion, that Ender's constitutional claims of denial of due process and equal protection of the law were presented to the New York courts and Ender's only recourse from an adverse decision was an appeal to the Supreme Court. I do not believe, however, that raising the constitutional issues in an application to the New York Court of Appeals for leave to appeal can be considered a sufficiently full litigation of these claims to bar Ender from raising them de novo in a federal court.[1] *Compare* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L. Ed.2d 440 (1964). Instead, I would reach the merits of these claims and would hold that Ender was not deprived of any constitutional rights.[2] The death of the trial judge before acting on Ender's post trial motion did not *ipso facto* entitle Ender to a new trial. His claim that under New York law he was entitled to a new trial or to have the trial court's decision set aside on the ground of newly discovered evidence was presented to the Appellate Division and the Court of Appeals and, we must as-

1. Judge Hays notes that "The record does not clearly disclose whether Ender actually presented the constitutional claims to the Appellate Division . . . ."

2. I realize there is a deceptive similarity between Judge Hays' position and my own. The distinction becomes immediately apparent if we assume *arguendo* that Ender had been deprived of constitutional rights by the New York courts.

As I read Judge Hays' opinion, in that instance he would have affirmed summary judgment because the constitutional claims were not properly before us while I would have reached the merits and reversed the summary judgment, assuming, of course, Ender's action against General Foods was an otherwise proper vehicle for presenting these constitutional claims.

sume, considered by both courts. Accordingly, I fail to see how the procedures employed by the New York courts in these circumstances deprived Ender of due process or equal protection of the law.

OAKES, Circuit Judge (concurring):

I concur in Judge Hays' opinion but in reference to Part III thereof do so only on the first ground advanced, viz., that under no construction of the facts can it be claimed that General Foods' conduct damaged Ender or deprived it of any fourteenth amendment rights under color of state law. Parenthetically it may be remarked that Ender would have had no standing to raise fourteenth amendment questions under the long-rejected views expressed in Mr. Justice Black's famous dissent in Connecticut General Life Insurance Co. v. Johnson, 303 U.S. 77, 87, 58 S.Ct. 436, 82 L.Ed. 673 (1938), and later in Mr. Justice Douglas's dissent in Wheeling Steel Corp. v. Glander, 337 U.S. 562, 576, 69 S.Ct. 1291, 93 L.Ed. 1544 (1949) (Black, J., joining). But cf. NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963) (corporation "directly engaged in" protected activities can raise constitutional claims). I know of nothing in the legislative history of the Civil Rights Act that compels us to hold that a corporation is a "person" entitled to protection thereunder irrespective of the activity engaged in by it. 28 U.S.C. §§ 1331, 1343(3) (1970). *See* Mickey v. Kansas City, 43 F.Supp. 739, 741 (W.D. Mo.1942) (religious organization challenging municipal ordinances claimed to interfere with first amendment rights can assert § 1343 jurisdiction). *But see* Northwestern Fertilizing Co. v. Hyde Park, 18 Fed.Cas.P. 393 (No.10,336) (C. C.N.D.Ill.1873). In any event it does not seem to me that in a case involving two corporations engaged in ordinary business activity and litigation resulting therefrom we should lean over backward to find conduct by one against the other to constitute "deprivation, under color of any State law . . . ." 28 U.S.C. § 1343(3). I find none here.