Bret F. MANESS, Appellant,

v.

John DAILY, Eric Smith, Tinamarie Buff-
ington, Thad Hamilton, Eric Spitzer,
Clifton Peck, Municipality of Anchor-
age, Anchorage Police Department,
Alaska State Troopers, Appellees.

No. S–12040.

Supreme Court of Alaska.

May 16, 2008.

Rehearing Denied June 13, 2008.

Bret F. Maness, pro se, Atwater, California.

Thomas M. McDermott, Assistant Municipal Attorney, James N. Reeves, Municipal Attorney, Anchorage, for Appellees, John Daily, Clifton Peck, Municipality of Anchorage, and Anchorage Police Department.

Ruth Botstein, Assistant Attorney General, Talis J. Colberg, Attorney General, Anchorage, for Appellees, Eric Smith, Thad Hamilton, and Eric Spitzer.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

1. Although Maness and Buffington had a wedding, they were never legally married.

*OPINION*

MATTHEWS, Justice.

At a sentencing hearing on a charge of illegal possession of a firearm, a federal district court found that Bret Maness had pointed a firearm at the officers who arrested him. The main question in this case is whether this finding may be given issue preclusive effect in a subsequent civil action where Maness claims that the officers used excessive force in arresting him. We conclude that issue preclusion is inappropriate. The sentencing court considered the events just before the arrest to be irrelevant and did not allow Maness to present evidence concerning them.

## I. FACTS

On June 27, 2001, Maness's former girlfriend Tinamarie Buffington[1] filed a petition for initiation of involuntary commitment for Maness, alleging that Maness was "very confused and ... very delusional." Based on her testimony, Superior Court Judge Eric S. Smith ordered that Maness be taken into temporary custody for emergency treatment pursuant to AS 47.30.700.

Acting on Judge Smith's order, Alaska State Troopers went to Maness's home in the early morning hours of June 28, 2001, to take him into custody and transport him to the Alaska Psychiatric Institute for evaluation. Maness alleges that the troopers tried to break into his home and that they engaged in "stealth" tactics. After exchanging words with the troopers, Maness fled from them in his motor home down the Parks Highway toward the Glenn Highway. Maness was pursued by State Troopers and by members of the Anchorage Police Department, which had been called for assistance.[2] He was forced to stop his vehicle after the tires on his motor home were punctured by tire deflation devices. Maness claims that he then exited his vehicle and held his hands up in the air for several minutes. After believing that he heard gunshots, Maness ran back

2. During the pursuit, the troopers mistakenly thought that Maness was shooting at their vehicles and reported this to a police dispatcher.

into his vehicle, grabbed a rifle, a handgun, and ammunition, and fled into the woods.

The police found Maness around 7:00 a.m. Precisely what happened next is a source of controversy. Maness claims that without provocation he was shot in the back by the police. The police contend that Maness was threatening them and that they shot him after he turned and pointed a rifle in their direction.

Maness was charged in state court with "eluding a peace officer who was attempting to serve a domestic violence order [sic], assaulting officers by making threats and pointing a rifle at them, and being a felon in possession of that rifle." However, all of the state charges were dismissed because the main testimony supporting the indictment was from an investigating officer who merely recited facts from the reports of other officers. Maness, however, was charged and convicted in federal district court for being a felon in possession of a firearm. At the sentencing hearing, United States District Court Judge Ralph R. Beistline found that Maness had, *inter alia,* engaged in assaultive conduct toward the police. The court sentenced Maness to ten years in jail, the maximum sentence allowable by statute.

## II. PROCEEDINGS

Maness, acting without legal counsel, filed a civil action against many of the participants in the events leading to his shooting and arrest. The complaint named Judge Eric Smith as a defendant, claiming that he had wrongly issued the ex parte mental commitment order. Also named as defendants were the Alaska State Troopers and individual Troopers Thad Hamilton and Eric Spitzer. The complaint alleged that Spitzer falsely reported to police dispatch that shots were fired at him and that his car was hit. The complaint also alleged that after stopping but before pursuing Maness into the woods, Spitzer and Hamilton inspected Spitzer's vehicle and found no damage yet negligently failed to report that Spitzer's earlier report concerning shots was not true.

The complaint also named the Municipality of Anchorage, the Anchorage Police Department, and Anchorage Police Officers Clifton Peck and John Daily. The complaint alleged that Peck had shot Maness in the back without warning, essentially stating a claim that excessive force was used to arrest Maness. According to the complaint, after Maness was shot, Daily told other officers on the scene over the police radio that he had previously "taken grenades off of" Maness. The complaint alleged that this statement was false and caused an unnecessary delay in obtaining medical treatment for Maness. The complaint also alleged that both the Anchorage Police and the State Troopers had wrongfully refused to return some of Maness's property. Further, the complaint contained a claim for false imprisonment. Maness sought compensatory damages for his personal injuries and for the loss of his property. In addition, he requested punitive damages and injunctive relief in the form of "a court order enjoining Alaska police agencies from gunning people down at the drop of a dime and enjoining Judges from issu[ ]ing Ex Parte orders on the whims of vindictive people."

The defendants answered, interposed numerous affirmative defenses, and brought a series of dispositive motions.

Judge Smith moved to dismiss for failure to state a claim upon which relief can be granted based on the doctrine of absolute judicial immunity. Superior Court Judge John Suddock granted this motion.

The State, including Troopers Hamilton and Spitzer, also moved to dismiss. The State's motion was based on AS 09.65.210, which precludes a person from recovering personal injury damages if the person when injured was engaged in the commission of a felony which substantially contributed to the person's injury.[3] This motion was premised on Maness's conviction of the felony of being a felon in possession of a firearm. The State argued that this felony substantially contributed to Maness's injury because while armed illegally he had threatened the police and this threat resulted in his being shot.[4] The State

---

3. The relevant text of AS 09.65.210 is set out *infra* note 16.

4. The State's motion also referred to *Burcina v. City of Ketchikan* where this court recognized on

argued that Maness was precluded from contesting that he had threatened the police by the findings of the United States District Court that were made at Maness's sentencing.

A few days after the State filed its motion to dismiss, the Municipality of Anchorage moved for summary judgment on behalf of the Anchorage Police Department and Anchorage Police Officers Daily and Peck. This motion was based on AS 09.65.210(1) and on the additional ground that the police officers were shielded by qualified immunity.

Maness opposed these motions. He claimed that the felon in possession of firearms conviction "could not have 'substantially contributed' to my personal injury as the mere possession of firearms ... is no reason to shoot me in the back with no warning." And he contended that he was not permitted at the sentencing hearing to present evidence concerning the events leading up to his shooting: "Judge Beistline precluded me from presenting any evidence or testimony at trial or at the sentencing hearing, ruling that it was not relevant to a possession ... charge."

The State's motion to dismiss and the Municipality's motion for summary judgment were decided by the superior court in a written order. At the outset the court denied the Municipality's motion for summary judgment as such, noting that it had filed no sworn affidavits setting forth admissible evidence. But the court ruled that the motion would be considered as a motion to dismiss since it overlapped the State's motion to dismiss. As to the latter, the court recognized that the critical issue was whether Maness had pointed a weapon at the officers. The court wrote that

> [t]he mere fact that he illegally possessed a firearm while fleeing in the woods would not alone enable the officers to use excessive force in his apprehension, with impunity from suit. The crime, standing alone, could not then be said to have substantially

contributed to his injury. It is only the alleged pointing of the weapon at the officers that causally links the offense to the outcome. That allegation implicates a factual issue outside the pleadings, which would normally defeat an ARCP 12(b)(6) motion.

The court went on to note that the district court's sentencing findings could resolve the factual issue: "If Judge Beistline found Mr. Maness was shot during or immediately after an assault with a deadly weapon, and that finding binds Mr. Maness, the excessive force personal injury claim is no longer viable."[5] Addressing this issue, the court concluded that the district court had "found by clear and convincing evidence that Mr. Maness had in fact assaulted the officers with a deadly weapon." The superior court further observed that "[b]ecause of that found fact, [the district court] enhanced the sentence under the federal sentencing guidelines. Thus, [the court's] finding was necessary to the judgment, although not to the conviction."

The superior court took note of Maness's claim that he had not been afforded a fair opportunity to present evidence regarding the assault allegations. The court asked Maness to file an affidavit setting forth the details of any curtailment of an opportunity to present his side of the story. Maness accepted this invitation by filing an affidavit of his federal defender who claimed that Maness was precluded from presenting evidence as to what occurred just before he was shot. But after reviewing this affidavit and the federal sentencing transcript, the superior court entered an order that concluded that Maness "had a full and fair opportunity to tell his tale, did so in fact, and that his account of excessive police force was considered and rejected by the federal court." The court found that the doctrine of collateral estoppel precluded Maness from contesting the district court's findings that he had pointed a rifle at the police and that this assaultive conduct led to the shooting. According-

---

common law grounds the "principle which precludes a person who has been convicted of a crime from imposing liability on others for the consequences of his or her own antisocial conduct." 902 P.2d 817, 821 (Alaska 1995).

5. In reaching this conclusion the court relied on the statute, AS 09.65.210(1), taken in combination with the common law principle expressed in *Burcina*, 902 P.2d at 820.

ly, the superior court ordered the dismissal of the excessive force claim.

In the same order the superior court dismissed Maness's claim for injunctive relief. The court wrote:

> The State moves to dismiss Plaintiff's count for injunctive relief to enjoin police authorities from using excessive force, and Alaska judges from issuing *ex parte* commitment orders without conducting a screening investigation. This court is without power to enjoin other Alaskan judges to interpret state law in a particular way. Nor can this court broadly enjoin police officers to refrain from the use of deadly force in unspecified situations, the facts of which are not before the court. The motion to dismiss the count for injunctive relief is granted.

Subsequently Maness's remaining claims against the State and the Municipality were resolved by stipulation. The stipulation reserved Maness's right to appeal the dismissal of his injunctive relief and excessive force claims.

## III. DISCUSSION

On appeal Maness argues that the dismissal of his excessive force claim based on findings made by the United States District Court at his sentencing was improper. He also argues that the temporary custody order entered under AS 47.30.700 did not comply with statutory and constitutional requirements and that injunctive relief barring similar orders in the future should have been issued. Finally, Maness argues that the order dismissing Judge Smith on judicial immunity grounds was error, but only insofar as injunctive relief was sought.

We address first the main issue, the dismissal of the excessive force claim.

### A. Excessive Force

#### 1. Collateral estoppel does not bar Maness from pursuing his excessive force claim.

 Collateral estoppel bars plaintiffs from relitigating matters that have already been decided in a previous forum. According to a typical statement of doctrine, applying collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [estoppel] is asserted had a full and fair opportunity to litigate."[6] "Whether collateral estoppel applies to a particular set of facts is a question of law that we review de novo, using our independent judgment."[7] When deciding the preclusive effect of federal litigation, this court "must look to federal law."[8]

Because the State and the Municipality rely on the preclusive effect of the district court's findings at a *sentencing hearing*, rather than the preclusive effect of the jury's verdict, this case presents the relatively novel issue of whether a judge's findings at a sentencing proceeding should bind subsequent civil litigation. Only the Second Circuit has considered this issue in any detail, and it was reluctant to extend preclusive effect to sentencing findings. The court "conclude[d] that precluding relitigating on the basis of such findings should be presumed improper. While we do not foreclose application of the doctrine in all sentencing cases, we caution that it should be applied only in those circumstances where it is clearly fair and efficient to do so."[9] We agree that caution is warranted in these circumstances.

Maness claims that he was shot in the back by an officer; the officers deny this accusa-

---

**6.** *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir.1998) (internal quotation omitted). This court has adopted a similar formulation: for collateral estoppel to apply, the issue between the parties must "have been actually litigated and determined in the first action ... and the determination must have been essential to the judgment." *DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 517 (Alaska 1989) (quotation omitted).

**7.** *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty*, 167 P.3d 64, 68–69 (Alaska 2007).

**8.** *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 92 (Alaska 1999).

**9.** *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 306 (2d Cir.1999).

tion and say that Maness was "facing them" and pointed his rifle in their direction. But Maness was prevented both at his criminal trial and at sentencing from introducing photographic evidence and testimony that purported to demonstrate that he was shot in the back. In a pointed exchange with Maness's attorney at trial, Judge Beistline remarked:

> And let me just clarify—I view this case as a case where the government has charged Mr. Maness, saying that he was a felon and that he possessed firearms illegally, and he has denied that. And so the government has to prove that, and so the evidence coming in surrounds that issue. This is not a civil trial . . . as to whether or not he was wrongfully arrested or as to whether or not excessive force was used. *That's another matter, but that's not before me.*

(Emphasis added.) Although we base our ruling on whether Maness was estopped on our own reading of the record, when a court expressly says that it is not reaching an issue, this statement is certainly germane to our consideration of whether that issue was fully and fairly litigated.[10] Further, as explained later in this opinion, we believe that the evidence Maness was not able to present would be relevant in any trial in which Maness alleged that the officers used excessive force in trying to apprehend him.

The jury was charged only with determining whether Maness had been in possession of a firearm, not whether he assaulted the police. However, the State and the Municipality primarily rely on the district court's findings of fact during Maness's sentencing hearing to argue that Maness should be precluded from claiming that the officers used excessive force against him. At the sentenc-

ing hearing, the district court was free to consider issues that went beyond those determined by the jury, and did so. As the superior court explained, "[a]t sentencing, Judge Beistline made findings of fact by clear and convincing evidence that were necessary for his determination of sentence enhancement under the federal sentencing guidelines." The federal court made findings that Maness had behaved in an assaultive manner toward the officers who were pursuing him, stating at one point: "It was a several hour hunt in the—in the woods, defendant was heavily armed during this time, and then there was the final threat, pointing of the weapon, that led to his shooting. Clearly defendant was engaged in assaultive conduct." The appellees argue that these sentencing findings should control any subsequent litigation brought by Maness and that because of them, in the words of the superior court, the "excessive force personal injury claim is no longer viable."

We do not believe that Maness should be collaterally estopped by the findings made at his sentencing hearing. The court restricted the evidence and testimony Maness could present. Maness requested permission to present witnesses at his sentencing hearing to show that he was shot in the back, but this was denied because the court found such evidence to be irrelevant to sentencing.[11] Thus Maness was not afforded the opportunity at sentencing to fully litigate his claim that the officers used excessive force in apprehending him. The use of collateral estoppel is subject to constraints based on fairness.[12] We conclude that it would be unfair to preclude Maness from maintaining this suit on the basis of conclusions reached in a sentencing hearing where he was barred from pre-

---

**10.** Cf. *Louis Ender, Inc. v. Gen. Foods Corp.*, 467 F.2d 327, 330 (2d Cir.1972) (issue that was deemed "irrelevant" by a state court in prior litigation was not barred by collateral estoppel).

**11.** The district court explained:
> The Court has considered Defendant's motion [for an evidentiary hearing] and the attachments thereto and does not find that any of the proposed witnesses have information relevant to Defendant's sentencing. Whether Defendant was shot in the back or not, and the

events leading to his arrest, will have no bearing on the sentence.

**12.** See *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."); *Monarch*, 192 F.3d at 306 (collateral estoppel "should be applied only in those circumstances where it is clearly fair and efficient to do so").

senting evidence that would be important in the current case.

### 2. Do other grounds exist for affirming the dismissal of the excessive force claim?

■ The Municipality argues that even if there is an unresolved issue of fact as to whether Maness pointed a firearm at the police, the dismissal of his excessive force claim can be affirmed on other grounds. Procedurally this argument is a proper one because this court may affirm a judgment on any appropriate basis, including grounds that are neither relied on nor raised in the superior court.[13] The Municipality contends that there are two such grounds in this case.

First, the Municipality relies on AS 11.81.370(a)(2).[14] This statute permits a police officer to use deadly force when necessary to make the arrest or terminate the escape from custody of a person who is in possession of a firearm. But this statute places conditions on the use of deadly force. It may be used "only when and to the extent the officer reasonably believes the use of deadly force is necessary to make the arrest or terminate the escape."[15] This means that deadly force is only authorized to the extent that its use is reasonably necessary to accomplish the stated objectives. On this record, and because issue preclusive effect may not be given to the district court's factual find-

ings at the sentencing hearing, there are unresolved factual questions that prevent us from so concluding.

■ The Municipality's second argument relies on AS 09.65.210(1).[16] The Municipality argues that "[b]y fleeing into the woods armed with an assault rifle, and attempting to elude police, Maness knew or should have known that he had created an extremely dangerous situation, posing a significant risk that he might be shot." While this argument has a certain appeal, the statute requires proof "by clear and convincing evidence that the *felony* substantially contributed to the personal injury." Here the felony was the mere possession of a firearm. We agree with the observation made by the superior court that "[t]he mere fact that [Maness] illegally possessed a firearm while fleeing in the woods would not alone enable the officers to use excessive force in his apprehension. . . . The crime, standing alone, could not then be said to have substantially contributed to his injury." Accordingly, we conclude that the court's dismissal of Maness's excessive force claim cannot be affirmed on alternative grounds. A remand for further litigation of this claim is therefore necessary.

### B. Maness's Remaining Claims Are Moot or Waived.

■ As previously noted, Maness contends that Judge Smith in issuing the temporary

---

**13.** We first recognized this rule in *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961). We have noted that

> this rule is not absolute. By its own terms, it applies only to issues of law that find support in settled facts. It does not extend to new theories that would normally be resolved by discretionary powers traditionally reserved for trial courts—powers relying on case-specific consideration of disputed or disputable issues of fact.

*Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006).

**14.** AS 11.81.370(a)(2) provides:

> (a) In addition to using force justified under other sections of this chapter, a peace officer may use nondeadly force and may threaten to use deadly force when and to the extent the officer reasonably believes it necessary to make an arrest, to terminate an escape or attempted escape from custody, or to make a lawful stop. The officer may use deadly force only when and to the extent the officer reasonably be-

lieves the use of deadly force is necessary to make the arrest or terminate the escape or attempted escape from custody of a person the officer reasonably believes

> . . . .
>
> (2) has escaped or is attempting to escape from custody while in possession of a firearm on or about the person[.]

**15.** AS 11.81.370(a).

**16.** AS 09.65.210(1) provides:

> A person who suffers personal injury or death . . . may not recover damages for the personal injury or death if the injury or death occurred while the person was
> (1) engaged in the commission of a felony, the person has been convicted of the felony, including conviction based on a guilty plea or plea of nolo contendere, and the party defending against the claim proves by clear and convincing evidence that the felony substantially contributed to the personal injury or death[.]

custody order did not properly follow the Alaska civil commitment statute, AS 47.30.700, and, alternatively, that the statute is unconstitutional. He also contends that the superior court should have issued an injunction against Judge Smith. Maness writes that he is in "continuing danger of a repeat performance of the terror he suffered on [that] harrowing night." We reject these claims for procedural reasons.

We have noted that "[a] claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy.'"[17] The issue of Maness's commitment order has every mark of no longer being a "present, live controversy." The commitment order was issued against Maness over six years ago. Maness is currently serving a ten-year prison term. The issue of whether there should be an injunction against the enforcement of the original civil commitment order is moot.

■ There is yet the possibility that Maness's case falls under the "public interest exception" where "we will ... consider a question [that] otherwise [is] moot."[18] We weigh three factors in deciding whether to apply the public interest exception: (1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine would, if applied, repeatedly prevent review of the issues, and (3) whether the issues are so important to the public interest as to warrant overriding the mootness doctrine.[19] Maness alleges that his ex-girlfriend will again have him committed: he says that she "has clearly shown her proclivity for the abuse of process and to vexatiously manipulate the judges" of Alaska.

We find that Maness's claim fails at the first step; he has presented a theory but no evidentiary basis for the claim that he will be the subject of another commitment order when he is released from prison.[20] And even assuming arguendo that the commitment order issued on June 27, 2001, was in error, we cannot further assume that this will be true of any future commitment order issued against Maness. Should someone seek to have Maness taken into temporary custody, this motion "would be based on a different set of facts specific to different circumstances."[21] An injunction against such future orders would be inappropriate, especially one as wide-ranging as Maness originally proposed.[22]

■ Maness also makes a constitutional challenge to the civil commitment statute itself in his brief. Maness states that a commitment process that allows temporary custody based solely on a judge's evaluation of the facts and credibility of a single witness (in Maness's words, "solely ... the unsubstantiated say-so of, for instance, a vexatious ex-spouse"), such as the process embodied in AS 47.30.700, should be held unconstitutional. Maness cites several cases designed to show that greater due process is required in the civil commitment process.[23]

The State rightly notes in its brief that Maness's constitutional challenge was not

---

17. *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (quoting *Municipality of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App.1997)).

18. *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380–81 (Alaska 2007).

19. *Id.*

20. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (denying injunctive relief based on a speculative belief in future harm).

21. *Wetherhorn*, 156 P.3d at 381.

22. In his complaint in superior court, Maness requested an order "enjoining Judges from issu-

ing Ex Parte orders on the whims of vindictive people."

23. None of the cases he cites appears to be directly on point. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (standard of proof for indefinite commitment); *Evans v. McTaggart*, 88 P.3d 1078 (Alaska 2004) (clear and convincing evidence standard required for granting non-parents custody of children over parents). Maness also cites *Grant v. Johnson*, 15 F.3d 146 (9th Cir.1994), but probably means to cite to *Grant v. Johnson*, 757 F.Supp. 1127 (D.Or. 1991), *dismissed as moot*, 15 F.3d 146 (9th Cir. 1994) (holding that Oregon's procedure for appointment of temporary guardian for six months violated due process).

raised in the superior court; it asserts that as a result the challenge ought to be considered waived. We agree. Maness's original complaint only alleged that the "Ex Parte mental commitment order was wrongly issued by … Judge Eric Smith." But this complaint pertains to the application of the statute and does raise the issue of the constitutionality of the statute itself. Maness's response to the trial court's dismissal of the suit against Judge Smith also merely repeats his attack on Judge Smith's alleged failure to follow the letter of the statute in committing him. Nor can a constitutional attack on the statute be gleaned from any of Maness's pleadings in the superior court.[24] The question of the constitutionality of the statute has therefore been waived.[25]

## IV. CONCLUSION

The judgment of the superior court is REVERSED with respect to Maness's claims based on excessive force. In all other respects it is AFFIRMED.

BRYNER, Justice, not participating.

---

24. *See Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1257 (Alaska 2007).

25. *Id.* ("[A] *pro se* litigant who fails to raise an issue below should not be able to raise the issue on appeal absent plain error."). Maness also raises a Fourth Amendment objection to the way in which his order was served. This claim, too, is a completely new claim and is accordingly waived.